1

Honorable John C. Coughenour

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

ELIZABETH A. CAMPBELL, SEATTLE
CITIZENS AGAINST THE TUNNEL, *et al.*,

12

13

Plaintiffs,

C09-1305-JCC

14

v.

**ORDER**

15

PETER JILIK, in his official capacity as
urban-area engineer of the Federal
Highway Administration, *et al.*,

16

17

Defendants.

18

19

    This matter comes before the Court on Defendant's motion to dismiss for lack of subject-matter

20

jurisdiction. (Dkt. No. 10). In addition to Defendant's motion, the Court has also considered Plaintiff's

21

response (Dkt. No. 27), and Defendant's reply (Dkt. No. 29). The Court finds that oral argument is

22

unnecessary, and, for the reasons explained below, hereby GRANTS Defendant's motion. The Court

23

therefore DISMISSES this matter in its entirety, without prejudice and without costs or fees to any party.

24

The Court therefore STRIKES Plaintiff's pending motion for a preliminary injunction. (Dkt. No. 9).

25

26

ORDER, C09-1305-JCC
Page 1

1    **I.      BACKGROUND**

2    Plaintiffs filed the complaint in this matter in September 2009.[1]  Plaintiff Elizabeth Campbell

3    signed the complaint, purporting to do so not only on her own behalf, but also on behalf of Seattle

4    Citizens Against the Tunnel and two additional named plaintiffs: Harvey Friedman and Sharon Price. The

5    complaint describes Ms. Campbell as "a concerned citizen seeking answers for [sic] the Defendants,

6    answers that have been withheld from the public at large." (Complaint 2 (Dkt. No. 1)). Seattle Citizens

7    Against the Tunnel is described as "a citizens group concerned with transportation choices,

8    environmental issues, and fiscal issues posed by the large public project[,]" while the two additional

9    named plaintiffs are described just as the complaint described Ms. Campbell: "concerned citizens seeking

10   answers for [sic] the Defendants, answers that have been withheld from the public at large." (*Id.* 2).

11   The substance of the complaint deals with plans to perform substantial construction on

12   approximately one mile of the Alaskan Way Viaduct. Plaintiffs take particular issue with the Federal

13   Highway Administration's decision to evaluate the construction of the one-mile segment as a distinct

14   project—independent of more comprehensive construction plans for the viaduct as a whole. Plaintiffs also

15   take issue with a 2009 environmental assessment of the construction plans. Under the National

16   Environmental Policy Act, *codified at* 42 U.S.C. § 4321 *et seq.*, the Highway Administration must perform

17   an environmental assessment before undertaking any major project. After conducting its review of the

18   then-proposed construction plans for the one-mile segment at issue, the Highway Administration issued a

19   finding of no significant impact. Plaintiff argues that these decisions were "arbitrary, capricious, an abuse

20   of discretion, and otherwise not in accordance with law." (Complaint 5 (Dkt. No. 27)). In March 2010, six

21   months after filing the complaint, Plaintiff moved for a temporary restraining order, asking this Court to

22   enjoin construction during the pendency of this litigation. (Dkt. No. 9).

23

24   [1]Plaintiffs no longer appear *pro se.* Washington State attorney Jill Smith filed a notice of appearance with this Court on April 16, 2010. (Dkt. No. 17). Ms. Smith therefore prepared and signed Plaintiffs' response to Defendant's motion to dismiss. (Dkt. No. 27). No amended complaint has been filed, nor have Plaintiffs filed a motion seeking leave to file an

25   amended complaint.

26   ORDER, C09-1305-JCC
     Page 2

1    Defendant filed the motion to dismiss now before the Court in April 2010. Defendant argues that

2    dismissal is warranted on several independent grounds—among them, improper and untimely service of

3    the complaint, lack of personal jurisdiction, and lack of subject-matter jurisdiction. (Motion 4–10 (Dkt.

4    No. 10)). Plaintiff filed a timely opposition brief in May 2010, arguing against all of Defendant's

5    theories of dismissal. (Dkt. No. 27). Because the Court dismisses this matter for lack of subject-matter

6    jurisdiction, it declines to address Defendant's other proposed grounds of dismissal.  *See Steel Co. v.*

7    *Citizens for a Better Environment*, 523 U.S. 83, 101 (1998) (discussing "the rule that Article III

8    jurisdiction is always an antecedent question" which a federal court must resolve before passing on to

9    consider any other issues).

10   **II.    FEDERAL JURISDICTION & STANDING**

11   Federal courts are courts of limited subject-matter jurisdiction. *Marbury v. Madison*, 5 U.S. 137,

12   174 (1803). As the Supreme Court has affirmed many times, "Article III § 2 of the Constitution confines

13   the federal courts to adjudicating actual 'cases' and 'controversies.' *Allen v. Wright*, 468 U.S. 737, 750

14   (1984); *see also Muskrat v. United States*, 219 U.S. 346 (1911) (refusing to adjudicate what the Court

15   characterized as a congressional request for an advisory opinion). The Supreme Court has described this

16   requirement as promoting the value of democratic self-government: "[C]onstitutional limitations on

17   federal-court jurisdiction [are] . . . founded in concern about the proper—and properly limited—role of

18   the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal citation omitted).

19   It is an absolute prerequisite to federal subject-matter jurisdiction that the plaintiff before the

20   court have constitutional standing. As the Supreme Court has stated, "The core component of the

21   requirement that a litigant have standing to invoke the authority of a federal court is an essential and

22   unchanging part of the case-or-controversy requirement under Article III." *Daimler-Chrysler Corp. v.*

23   *Cuno*, 547 U.S. 332, 342 (2006). The Supreme Court articulated the requirements for Article III

24   standing in *Lujan v. Defenders of Wildlife*:

25

26   ORDER, C09-1305-JCC
     Page 3

1
2
3
4
5

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

6  *Lujan*, 504 U.S. 555, 560–61 (1992) (internal citations and markings omitted). The party invoking

7  federal jurisdiction has the burden of establishing each of the three elements: "Since they are not mere

8  pleading requirements but rather an indispensable part of the plaintiff's case, each element must be

9  supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*,

10  with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504

11  U.S. at 561.

12  **A.    Associational Standing**

13      An association of individuals can invoke the jurisdiction of the federal courts under two separate

14  theories. First, the association can sue based on injuries it has suffered to its own interests, independent

15  of any harm its members might have suffered. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363,

16  379 (1982) (finding that a civil-rights organization committed to helping people find housing in

17  integrated communities had standing to invoke the protections of the Fair Housing Act because of the

18  resources the organization expended to detect and combat discriminatory practices). When an

19  association invokes this first theory, this Court analyzes the association's jurisdictional arguments using

20  the typical standing analysis, evaluating whether the association has itself suffered a legally cognizable

21  injury, which was caused by the defendant, and which an order of the Court is likely to redress. *See*

22  *Coleman*, 455 U.S. at 378–79 ("In determining whether [the association] has standing under the Fair

23  Housing Act, we conduct the same inquiry as in the case of an individual[.]").

24  //

25

26  ORDER, C09-1305-JCC
Page 4

1    Under the second theory of associational standing, an organization can sometimes litigate the

2  rights of its injured members, even if the organization itself has not suffered any injury. *See, e.g., United*

3  *States v. SCRAP*, 412 U.S. 669, 683–90 (1973) (finding that an environmental-advocacy group had

4  standing to litigate its members' interests in clean forests and waterways in the District of Columbia

5  metropolitan area, even though the organization itself had not suffered any injury). The Supreme Court

6  stated the modern requirements for this second theory of associational standing in *Hunt v. Washington*

7  *State Apple Advertising Commission*:

8       [A]n association has standing to bring suit on behalf of its members when: (a) its
        members would otherwise have standing to sue in their own right; (b) the interests it
9       seeks to protect are germane to the organization's purpose; and (c) neither the claim
        asserted nor the relief requested requires the participation of individual members in the
10      lawsuit.[2]

11 *Hunt*, 432 U.S. 333, 343 (1977).

12     Under either theory of associational standing, "an organization's abstract concern with a subject

13 that could be affected by an adjudication does not substitute for the concrete injury required by Article

14 III." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41 (1976); *see also Schmier*

15 *v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 823 (9th Cir. 2002) ("A mere interest in a

16 problem, no matter how long-standing the interest and no matter how qualified the organization is in

17 evaluating the problem, is not sufficient by itself to render the organization adversely affected or

18 aggrieved." (internal markings omitted)).

19 **B.    Standing and Democratic Self-Government**

20     Article III standing promotes several important constitutional values—perhaps none more so

21 than separation of powers and democratic self-government. As the Supreme Court has explained, the

22 "law of Article III standing is built on a single basic idea—the idea of separation of powers." *Allen*, 468

23

24     [2]The Supreme Court clarified that the third requirement is prudential in nature in *United Food & Commercial*
   *Workers v. Brown Group, Inc.*, 517 U.S. 544, 556–57 (1996). Because the requirement "rest[s] on less than constitutional
25 necessity," Congress can waive it by statute without running afoul of Article III. *Id.* at 558.

26 ORDER, C09-1305-JCC
   Page 5

1    U.S. at 752. Federal courts therefore analyze questions of constitutional standing with the limited role of

2    a non-elected federal judiciary squarely in mind, heeding the Supreme Court's admonition that all

3    questions of standing "must be answered by reference to the Article III notion that federal courts may

4    exercise power only in the last resort, and as a necessity, and only when adjudication is consistent with a

5    system of separated powers and the dispute is one traditionally thought to be capable of resolution

6    through the judicial process." *Allen*, 468 U.S. at 752 (internal citations and markings omitted).

7          The separation-of-powers principle inherent in Article III creates a ban on "generalized

8    grievances shared in a substantially equal measure by all or a large class of citizens." *Warth*, 422 U.S.

9    at 499. The ban on generalized grievances sometimes operates to leave citizens without the ability to

10   initiate judicial review of potentially unlawful behavior by officials in the political branches. *See Allen*,

11   468 U.S. at 754 ("This Court has repeatedly held that an asserted right to have the Government act in

12   accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."). This

13   outcome is entirely appropriate in a constitutional system built upon separation of powers: "To permit a

14   complainant who has no concrete injury to require a court to rule on important constitutional issues in

15   the abstract would create the potential for abuse of the judicial process, distort the role of the judiciary

16   in its relationship to the executive and legislature, and open the judiciary to an arguable charge of

17   providing 'government by injunction'" *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S.

18   208, 222 (1974); *see also* Antonin Scalia, *The Doctrine of Standing as an Essential Element of the*

19   *Separation of Powers*, 17 SUFFOLK U. L. REV. 881, 894 (1983) ("[T]he law of standing roughly

20   restricts courts to their traditional undemocratic role of protecting individuals and minorities against

21   impositions of the majority, and excludes them from the even more undemocratic role of prescribing

22   how the other two branches should function in order to serve the interest *of the majority itself*."

23   (emphasis in original)).

24   //

25

26   ORDER, C09-1305-JCC
     Page 6

1    **III.    LEGAL STANDARD**

2        A motion to dismiss for lack of subject-matter jurisdiction arises under Federal Rule of Civil

3    Procedure 12(b)(1). If the moving party confines its attack to the four corners of the complaint, it has

4    mounted a "facial attack" on the plaintiff's assertion of federal subject-matter jurisdiction. A facial attack

5    challenges the sufficiency of the complaint itself, requiring the Court to accept the allegations contained

6    therein as true and to draw all reasonable inferences in favor of the non-moving party. *Doe v. Holy See*,

7    557 F.3d 1066, 1073 (9th Cir. 2009). This Court confines its inquiry to the complaint itself, and must not

8    consider material outside the pleadings: "[S]tanding is determined as of the date of the filing of the

9    complaint. The party invoking the jurisdiction of the court cannot rely on events that unfolded after the

10   filing of the complaint to establish its standing." *Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005); *see*

11   *also Lujan*, 504 U.S. at 570 n.4 (1992) ("The existence of federal jurisdiction normally depends on the

12   facts *as they exist when the complaint is filed.*") (emphasis in original).

13       This Court must resolve challenges to its jurisdiction before addressing the case on its merits, and

14   even before resolving challenges to personal jurisdiction. *See Steel Co. v. Citizens for a Better*

15   *Environment*, 523 U.S. 83, 93–102 (1998); *accord United States v. Lopez*, 577 F.3d 1053, 1066 (9th Cir.

16   2009). The requirement that federal courts first resolve jurisdictional questions is reflected in a long line of

17   cases. *See, e.g., Mansfield, C.& L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884) (citing *Capron v. Van*

18   *Noorden*, 6 U.S. 126 (1804), for the proposition that a federal court must resolve jurisdictional questions

19   before considering a case's merits, and describing the requirement as "springing from the nature and limits

20   of the judicial power of the United States," and "inflexible and without exception."). This Court would run

21   the risk of acting beyond the scope of its constitutionally authorized powers if it were to proceed to

22   consider the merits while jurisdictional issues remain in doubt. As the Supreme Court has stated, "For a

23   court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no

24   jurisdiction to do so is, by very definition, for a court to act *ultra vires.*" *Steel Co.*, 523 U.S. at 101–02.

25

26   ORDER, C09-1305-JCC
     Page 7

1    If this Court lacks subject-matter jurisdiction, its duty is clear, and it performs that duty without

2    discretion: As the Supreme Court explained as long ago as 1868, "Without jurisdiction, the court cannot

3    proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, *the only*

4    *function remaining to the Court is that of announcing the fact and dismissing the cause.*" *Ex parte*

5    *McCardle*, 74 U.S. 506, 514 (1868) (emphasis added).

6    **IV.    DISCUSSION**

7    This Court lacks jurisdiction to adjudicate Plaintiffs' claims. Plaintiffs Elizabeth Campbell,

8    Harvey Friedman and Sharon Price plead nothing more than that they are "concerned citizens" who have

9    filed this lawsuit in their search for "answers that have been withheld from the public at large."

10   (Complaint 2 (Dkt. No. 1)). Seattle Citizens Against the Tunnel is described in equally cursory terms:

11   The complaint avers nothing more than that it "is a citizens group concerned with transportation choices,

12   environmental issues, and fiscal issues posed by [the] large public project." (*Id.*). The complaint nowhere

13   recounts whether the named plaintiffs are members of the citizens group. Indeed, the complaint nowhere

14   recounts the names of any of the group's members, or whether the group has any members at all. (*Id.*).

15   Most importantly, the complaint nowhere pleads facts tending to establish that any of the

16   plaintiffs have suffered "an injury in fact—an invasion of a legally protected interest which is (a)

17   concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504

18   U.S. at 560 (internal citations and markings omitted). The three individual plaintiffs aver only that they

19   are "concerned citizens." Plaintiffs' concern does not rise to the level of a particularized injury, as all

20   residents in the Seattle metropolitan area share a concern that construction on the Alaskan Way Viaduct

21   be performed in an environmentally sensitive manner. Plaintiffs therefore allege nothing more than a

22   "generalized grievance, shared in a substantially equal measure by all or a large class of citizens." *See*

23   *Warth*, 422 U.S. at 499. The three individual plaintiffs' allegations of injury therefore cannot confer

24   jurisdiction on this Court.

25

26   ORDER, C09-1305-JCC
     Page 8

1    The allegations of injury of Seattle Citizens Against the Tunnel fare no better. Because the

2    complaint fails to identify any of the group's members, the group cannot invoke this Court's jurisdiction

3    in order to litigate the rights of injured members: The group's claim to standing necessarily therefore

4    stands or falls on alleged injury to the group itself.[3] The complaint nowhere identifies a single

5    expenditure of funds or any other expenditure of energies or resources that the group has incurred

6    because of the challenged action. In fact, the *only* information offered in the complaint about Seattle

7    Citizens Against the Tunnel is that it is "a citizens group concerned with transportation choices,

8    environmental issues, and fiscal issues posed by this large public project." (Complaint 2 (Dkt. No. 1)).

9    This broad description establishes nothing more than that the group holds an "abstract concern with a

10   subject that could be affected by an adjudication." *See Simon*, 426 U.S. at 41. The law on this point is

11   clear: The group's abstract concern "does not substitute for the concrete injury required by Article III."

12   *Id.*; *see also Schmier*, 279 F.3d at 823 ("A mere interest in a problem . . . is not sufficient by itself to

13   render [an] organization adversely affected or aggrieved." (internal markings omitted)).

14        Plaintiffs' arguments to the contrary miss the point of the standing analysis. Plaintiffs nowhere

15   identify a concrete injury they allege to have suffered. Instead, they rest on an argument that they have

16   suffered "procedural injuries." (Response 6 (Dkt. No. 27)). According to Plaintiffs, they successfully

17   alleged particularized injury by pleading that the Highway Administration failed to comply with the

18   requirements of the National Environmental Policy Act. According to Plaintiffs, nothing more is

19   required to successfully invoke this Court's jurisdiction. As they argue, "These 'procedural injuries,'

20   that is, the NEPA rules that have been violated, do affect Plaintiffs' concrete interests." (*Id.*) Plaintiffs

21   offer this argument without offering a citation to a single case or other legal authority. (*Id.*).

22

---

23        [3]Assuming *arguendo* that the three individual plaintiffs are members of Seattle Citizens Against the Tunnel, the
     group's claim to standing nonetheless fails. Because the three individual plaintiffs have failed to allege a concrete and
24   particularized injury, the citizens group cannot invoke this Court's jurisdiction in order to litigate their claims. *See Hunt*, 432
     U.S. at 343 ("[A]n association has standing to bring suit on behalf of its members when, [*inter alia*], *its members would*
25   *otherwise have standing to sue in their own right*.") (emphasis added).

26   ORDER, C09-1305-JCC
     Page 9

1    Plaintiffs' argument fails. A party cannot defeat the Article III standing requirement of a

2    concrete and particularized injury by simply asserting that it has suffered a "procedural injury." As the

3    Supreme Court stated in its 2009 term:

4       [D]eprivation of a procedural right without some concrete interest that is affected by the
        deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing.
5       Only a person who has been accorded a procedural right to protect *his concrete interests*
        can assert that right without meeting all the normal standards for redressability and
6       immediacy.

7    *Summers v. Earth Island Institute*, -- U.S. --, --, 129 S.Ct. 1142, 1151 (2009) (emphasis in original;

8    internal markings omitted).

9       Plaintiffs therefore cannot seek relief from this Court, which "exercise[s] power only in the last

10   resort, and as a necessity[.]" *See Allen*, 468 U.S. at 752. If this Court were to interfere with the ongoing

11   political process to grant Plaintiffs their requested relief, it would "open the judiciary to an arguable

12   charge of providing 'government by injunction.'" *See Schlesinger*, 418 U.S. at 222. The requirement

13   that a plaintiff enjoy constitutional standing before invoking this Court's jurisdiction prevents such an

14   undesirable outcome. Because Plaintiffs' complaint nowhere identifies any concrete, particularized harm

15   that they have suffered because of the actions of the Highway Administration, this Court lacks subject-

16   matter jurisdiction. Having concluded that it lacks the power to declare the law in this matter, "the only

17   function remaining to the Court is that of announcing the fact and dismissing the case." *See Ex parte*

18   *McCardle*, 74 U.S. at 514.

19   **V.    CONCLUSION**

20      For the aforementioned reasons, the Court hereby GRANTS Defendant's motion to dismiss.

21   (Dkt. No. 10). The Court DISMISSES this matter without prejudice, and without costs or fees to any

22   party.

23   //

24   //

25

26   ORDER, C09-1305-JCC
     Page 10

1   //

2

3             SO ORDERED this 25th day of June, 2010.

4

5

6             _____
              JOHN C. COUGHENOUR
7             United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   ORDER, C09-1305-JCC
     Page 11